# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs June 24, 2003

## STATE OF TENNESSEE v. DENNIS MICHAEL RICHARDSON

**Direct Appeal from the Criminal Court for Greene County**
**No. 01CR217      James E. Beckner, Judge**

---

**No. E2002-02675-CCA-R3-CD**
**July 14, 2003**

---

Following a jury trial, the Defendant, Dennis Michael Richardson, was convicted of Class B misdemeanor assault. The trial court sentenced him to serve six months in the county jail. In this appeal, the Defendant argues that the trial court erred in its application of one of the sentencing enhancement factors. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

Michael Walcher, Greeneville, Tennessee, for the appellant, Dennis Michael Richardson.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; C. Berkeley Bell, District Attorney General; and Cecil Mills, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

We will briefly address the evidence supporting the Defendant's assault conviction. The Defendant resided with his wife and his three step-children. Although the children resided in the home with the Defendant and his wife, the Tennessee Department of Children's Services exercised some court-ordered responsibility for the children. Although it is unclear from the record exactly what control the Department of Children's Services exercised, the children were referred to as being in "state custody."

On the afternoon of November 13, 2001, a Department of Children's Services caseworker, along with a "transportation officer," arrived at the Defendant's residence for an unannounced home visit with the children. When the caseworker arrived, neither the Defendant nor his wife was

present, but the youngest child was present, having just arrived home from school. Shortly after the Children's Services employees arrived, the Defendant, his wife and the two other children arrived.

The caseworker and the transportation officer both testified that as soon as the Defendant and his wife arrived at the residence, the Defendant's wife became extremely upset and angry and started cursing the caseworker. The Defendant became involved by assaulting the transportation officer, and a struggle ensued. During the course of the struggle, the Defendant grabbed the caseworker by the throat as if to choke her and also kicked her. She reported receiving bruises to the area around her throat. As the caseworker and the transportation officer were attempting to leave, the caseworker testified that the Defendant got a "tire iron" out of his vehicle and "came at me with this tire iron." She testified that she was "scared to death because he was telling me he was going to kill me if I didn't get off of his property."

Concerning this confrontation, the Defendant stated, "and we got into a struggle and I knocked his glasses off. And I think I punched him." During the struggle, the Defendant acknowledged that he put his hands around the caseworker's throat and pushed her. He testified that, "And she started to, like, come towards me, whatever, I don't remember exactly, turning around, whatever, and I kicked her." The Defendant denied that he brandished a tire iron.

At trial, the State introduced a written statement signed by the Defendant in which he admitted that he grabbed the caseworker by the throat, then turned her loose and "kicked her in the butt." During his testimony at trial, the Defendant stated, "And as far as the kicking, it must have been an act of God. I don't know. I have no idea why I kicked her, no reason whatsoever; I can't say."

The Defendant was indicted for two counts of Class A misdemeanor assault: one count involving the caseworker and the other count involving the transportation officer. See Tenn. Code Ann. § 39-13-101(a)(2). The jury found him not guilty on the count charging assault against the transportation officer and found him guilty of the lesser included offense of Class B misdemeanor assault against the caseworker. See Tenn. Code Ann. § 39-13-101(a)(3). The trial court sentenced him to the maximum sentence of six months in the county jail and set his release eligibility at seventy-five percent. In sentencing the Defendant, the trial judge applied as one of the enhancement factors that the Defendant possessed or employed a deadly weapon (the tire iron) during the commission of the offense. See Tenn. Code Ann. § 40-35-114(10) (Supp. 2002). On appeal, the Defendant challenges the application of this enhancement factor and requests this Court to review the Defendant's sentence de novo.

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides in part that the trial court shall impose a specific sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. See Tenn. Code Ann. § 40-35-302(b). Misdemeanor sentencing is designed to provide the trial court with continuing jurisdiction and a great deal of flexibility. See State v. Troutman, 979 S.W.2d 271, 273 (Tenn. 1998); State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997). One convicted of a

misdemeanor, unlike one convicted of a felony, is not entitled to a presumptive sentence. See State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).

In misdemeanor sentencing, a separate sentencing hearing is not mandatory, but the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of service of the sentence. Tenn. Code Ann. § 40-35-302(a). The trial court retains the authority to place the defendant on probation either immediately or after a time of periodic or continuous confinement. Id. § 40-35-302(e).

Our supreme court has held that, although the better practice is for a trial court to make findings on the record when fixing a percentage of a Defendant's sentence to be served in confinement, such findings are not required. See State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). A trial court does need to "consider" the principles of sentencing and enhancement and mitigating factors when sentencing a misdemeanant. See id. In sentencing the Defendant in this case, the trial court placed on the record its findings concerning the application of enhancement and mitigating factors along with its consideration of the principles of sentencing.

In addition to finding that the Defendant employed a deadly weapon during the commission of the offense, the trial court also found as enhancement factors (1) that the Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range and (2) that the Defendant had a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. See Tenn. Code Ann. § 40-35-114(2)(9) (Supp. 2002). The Defendant does not challenge the application of either of these enhancement factors, and the record supports the findings of the trial court.

Concerning enhancement for possessing or employing the tire tool during the assault, the trial court stated "And, although this was disputed, the credible evidence in the case is that [the defendant] possessed a deadly weapon, a tire tool, during the commission of the offense."

The Defendant argues that the jury's verdict indicates that the jury rejected the use of a deadly weapon because the verdict convicting the Defendant of Class B misdemeanor assault negates the fear of bodily injury which the use of the tire tool would have caused. He also argues that because proof of the use of a deadly weapon was not introduced during the sentencing hearing, it is unfair for the display of the weapon to be used against him in sentencing.

We conclude that the Defendant's argument has no merit. Our supreme court has held that a sentencing court may apply an enhancement factor based on facts underlying an event for which the Defendant has been acquitted so long as the facts are established in the record by a preponderance of the evidence. See State v. Winfield, 23 S.W.3d 279, 281 (Tenn. 2000). In so holding, the court noted that facts relevant to sentencing must be proven by a preponderance of the evidence and not beyond a reasonable doubt. See id. The court also pointed out that our sentencing law requires the sentencing court to consider, among other factors, the evidence received both at the trial and at the sentencing hearing. See id. at 283.

In this case, the trial court found that "credible" evidence supported a finding that the Defendant possessed a deadly weapon during the commission of the offense. Thus, even though the evidence was disputed, the trial court clearly credited the State's witnesses in this regard. We find no error on the part of the trial court in applying this enhancement factor.

In sentencing the Defendant, the trial court also observed that the victim of the offense was a state employee performing a very important duty mandated by law. Like the trial court, we are mindful that the victim of the assault was a caseworker for the Tennessee Department of Children's Services who was attacked in the course of her employment while endeavoring to protect and assure the well-being of children who had been placed under the supervision of the state pursuant to court order. Noting the need for deterrence to be considered, the trial court emphasized a "need to let the public know that those sorts of things cannot happen." Even if the Defendant had not been found to have employed a deadly weapon during the commission of the assault, we believe the facts and circumstances surrounding the offense, combined with the additional enhancement factors found, would be sufficient to justify the sentence imposed by the trial court.

The judgment of the trial court is accordingly affirmed.

_____

DAVID H. WELLES, JUDGE